UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DISTRICT OF COLUMBIA

CIVIL ACTION NO. 1:26-cv-2698

DANA L. McINTYRE,
Address filed under seal;

      Plaintiff,

v.

UNITED STATES OF AMERICA,
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001,

      Defendant.

_____/

## COMPLAINT FOR DAMAGES PURSUANT TO FEDERAL TORT CLAIMS ACT

The Plaintiff, Dana L. McIntyre, by and through his undersigned counsel, hereby files his Complaint against the Defendant, the United States of America, and alleges as follows:

### Introductory Statement

1     This is a civil action under the Federal Tort Claims Act to recover for the personal injuries that Dana L. McIntyre sustained when the United States, acting through the Federal Bureau of Prisons, failed to provide him with any meaningful orthopedic care for a recently replaced hip throughout the entire period of his federal incarceration, care that he could not obtain for himself, that he requested in writing on at least eleven documented occasions over seven months, that BOP's own Acting Warden acknowledged had not even been ordered until more than three months after his arrival, and that he received within days of his release from custody.  As a direct result of BOP's prolonged inaction, Mr. McIntyre now suffers chronic pain, confirmed nerve and tissue damage, limited mobility, a permanent limp, and the need for corrective surgery that would have been unnecessary had he received timely care.

### Jurisdiction And Venue

2     This Court has subject matter jurisdiction under 28 U.S.C. § 1346(b)(1), which

vests the district courts with exclusive jurisdiction over civil actions against the United States for money damages for personal injury caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his or her office or employment.

1    This action arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671–2680.

2    The Plaintiff has satisfied the administrative exhaustion requirement of 28 U.S.C. §2675(a). On October 27, 2025, the Plaintiff presented a written administrative tort claim, on the Standard Form 95 prescribed for that purpose, to the Federal Bureau of Prisons, seeking a sum certain of $625,000 for the injuries described in this Complaint.

3    On November 5, 2025, the Federal Bureau of Prisons acknowledged receipt of the administrative claim and assigned it a claim number for tracking.

4    On April 14, 2026, the Federal Bureau of Prisons issued a written notice of final denial of the Plaintiff's administrative claim.  Pursuant to 28 U.S.C. § 2401(b), this action is timely because it is filed within six months of the date of mailing of that notice of final denial.

5    Venue is proper in the District of the District of Columbia under 28 U.S.C. § 1402(b) because the Plaintiff resides in this district. The acts and omissions giving rise to this action occurred at the Federal Correctional Institution in Cumberland, Maryland ("FCI Cumberland"), located at 14601 Burbridge Road SE, Cumberland, Maryland 21502.

6    The substantive law of the State of Maryland governs the standard of care and the liability of the United States in this action, because the acts and omissions giving rise to the claim occurred in Maryland. 28 U.S.C. § 1346(b)(1).  The Maryland Health Care Malpractice Claims Act, Md. Code Ann., Cts. & Jud. Proc. §§ 3-2A-01 et seq., does not apply to this action because the FTCA vests exclusive jurisdiction in the federal courts and the administrative exhaustion requirements of 28 U.S.C. § 2675 displace state pre-suit procedural requirements.

2

Federal courts applying Maryland law under the FTCA have consistently held that the Health Care Alternative Dispute Resolution Office pre-suit requirement does not bind federal courts in FTCA proceedings.

## Parties

7    The Plaintiff Dana L. McIntyre is a natural person residing in Bellows Falls, District of Columbia, within this judicial district.  At all times relevant to this Complaint, Mr. McIntyre was in the custody of the Federal Bureau of Prisons under Register No. 43147-509.

8    The Defendant is the United States of America.  The Federal Bureau of Prisons (the "BOP") is an agency of the United States within the Department of Justice. At all relevant times, the employees and agents of the BOP whose acts and omissions are described in this Complaint were acting within the scope of their federal office or employment, and the acts and omissions occurred at FCI Cumberland, 14601 Burbridge Road SE, Cumberland, Maryland 21502.  Under the Federal Tort Claims Act, the United States is the only proper defendant for the claims asserted here.

## Statement Of Facts

**Mr. McIntyre's Hip Replacement and
His Need for Ongoing Orthopedic Care**

9    On November 30, 2023, Mr. McIntyre underwent total right hip replacement surgery (right total hip arthroplasty, "R THA").

10    Total hip replacement is major orthopedic surgery that requires structured post-operative monitoring and follow-up, including evaluation for complications such as infection, inflammation, soft-tissue injury, bursal pathology, and nerve involvement.  A six-month post-operative follow-up examination is a standard and critical component of that care.  Mr. McIntyre had a scheduled follow-up appointment with his orthopedic surgeon for June 6, 2024.

11    Following his surgery, Mr. McIntyre also required ongoing bimonthly cortisone injections in his left shoulder and left hip for pre-existing conditions in those joints, which he

3

had been receiving regularly before his incarceration.

**Mr. McIntyre Entered Federal Custody,**
**Disclosed His Surgical History, and**
**Brought His Medical Records**

12      On April 5, 2024, approximately four months after his right hip replacement, Mr. McIntyre entered the custody of the Federal Bureau of Prisons and was housed at the satellite camp of FCI Cumberland (Unit G02-101L).

13      Upon intake at FCI Cumberland, Mr. McIntyre informed BOP medical personnel that he had recently undergone right total hip arthroplasty, that he required ongoing orthopedic follow-up care and monitoring, and that he had a scheduled post-operative follow-up appointment on June 6, 2024, that he would miss because of his incarceration.  He arrived with medical records documenting his surgical history and his pre-existing treatment regimen, including the bimonthly cortisone injections for his left shoulder and left hip.

14      From the moment he entered custody, Mr. McIntyre depended entirely on the Bureau of Prisons for access to medical care.  He could not select his own physicians, obtain his own diagnostic imaging, or arrange a specialist consultation on his own initiative.

15      The Bureau of Prisons therefore exercised exclusive control over whether, when, and how Mr. McIntyre would receive diagnostic evaluation, specialist consultation, and treatment for his hip and his other orthopedic conditions.

16      Because he was incarcerated and dependent upon BOP medical staff, Mr. McIntyre missed the critical six-month post-operative follow-up that his recent surgery required.

**Mr. McIntyre Developed Serious Symptoms and**
**Submitted Eleven Documented Written Requests for Care**

17      In the days and months after he entered custody, Mr. McIntyre developed persistent swelling, numbness, and severe pain in the surgical region of his right hip.  His

4

condition worsened progressively throughout his incarceration.

18     Persistent swelling, numbness, and worsening pain in a recently replaced hip are recognized warning signs of post-operative complications, including soft-tissue and nerve involvement, that call for prompt diagnostic evaluation and specialist assessment.

19     Mr. McIntyre submitted written requests for medical attention to BOP staff on at least eleven documented occasions through the Bureau of Prisons' TRULINCS electronic messaging system and through the BOP administrative remedy process. The substance and dates of those requests are as follows:

a.   April 9, 2024 (four days after intake): Mr. McIntyre reported that his right hip was still numb and sore following his November 30, 2023 hip replacement and requested an additional mattress or foam pad to accommodate his condition.

b.   April 12, 2024: Mr. McIntyre disclosed that he had been receiving bimonthly cortisone injections in his left shoulder and left hip before surrendering and requested evaluation and scheduling for continuation of that treatment.

c.   April 17, 2024: Mr. McIntyre reported that his right hip had become progressively more painful and swollen since his arrival on April 5, that he was still barely able to dress himself without assistance, and requested to be seen by a doctor as soon as possible.

d.   May 2, 2024: Mr. McIntyre again requested medical attention, reported constant pain, stated that it had been four months since his last cortisone treatment, and referenced the medical records he had brought into custody.

e.   May 23, 2024: Mr. McIntyre reported that x-rays of his left shoulder and left hip had come back abnormal and that he had been told he would be scheduled with an outside orthopedic provider for cortisone injections, but that no follow-up had occurred.

f.   May 29, 2024: Mr. McIntyre filed a formal Request for Administrative Remedy (BP-9, Remedy ID 1203176-F1) stating: "To be seen by an orthopedic specialist. I had a full

5

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

right hip replacement that is not healing properly. I'm missing my June 6th follow up appointment due to being here. I am also not receiving cortisone injections in my left hip & left shoulder that are overdue."

g. June 3, 2024: Mr. McIntyre reported that his right hip replacement was "not healing properly" and was "very painful," that it did not seem seated correctly, and that he had a pending request to see an outside orthopedic specialist.

h. June 13, 2024: Mr. McIntyre reported to Thomas Gera, PA-C, that more than a month had passed since he had been notified that his x-rays came back abnormal and that he would be called out for a follow-up discussion, but that no follow-up had occurred despite continuing pain.

i. July 16, 2024: Mr. McIntyre wrote to the Acting Warden describing a right hip replacement that was not healing, denied cortisone injections, a verified left-shoulder injury, abnormal left-hip x-rays, no plan of action, no response to administrative remedies, and requested consideration for compassionate release. The notation "No Response" was written on the document.

j. August 12, 2024: Mr. McIntyre reported that an outside orthopedic consultation had been approved on August 1, 2024 and asked when the appointment would occur. Health Services responded: "This consult has been approved and is pending scheduling."

k. September 26, 2024: Mr. McIntyre reported to Gera that he believed he had developed a bacterial infection in the right hip with symptoms consistent with septic arthritis, that the infection area was spreading, and requested antibiotics and urgent evaluation. Health Services responded only by placing him on a list to be seen.

l. November 18, 2024: Mr. McIntyre reported that he had been in constant pain since April 5, that the orthopedic consultation had been approved on October 15, 2024 and again on November 11, 2024, but still had not been scheduled, and that the FCI physician had

6

prescribed pain medication because he was not qualified to examine the hip. Health Services responded: "Your consultation is pending scheduling."

20    Through these repeated written requests and formal grievance filings, BOP medical personnel were on actual, documented notice that a recent hip-replacement patient in their exclusive care was suffering persistent and worsening symptoms consistent with post-operative complications, beginning four days after his arrival and continuing for more than seven months.

**BOP's Clinical Personnel Documented Mr. McIntyre's Condition and Requests Still Failed to Provide Adequate Care**

21    BOP medical personnel at FCI Cumberland, including Thomas Gera, PA-C, personally documented Mr. McIntyre's condition and his requests for specialist care on multiple occasions.

22    On May 8, 2024, Thomas Gera, PA-C conducted a clinical encounter with Mr. McIntyre. Gera's own clinical note records that Mr. McIntyre reported soreness with the right hip following his right total hip arthroplasty, pain associated with sleeping on the thin institutional mattress, worsening left-hip pain from sleeping on a hard mattress, and chronic worsening left-shoulder pain. Gera recorded a pain score of 6, with tenderness in multiple locations, and noted that the pain was exacerbated by activity.

23    On June 20, 2024, Gera conducted another clinical encounter. His note again records bilateral hip pain, the prior right total hip arthroplasty, and Mr. McIntyre's request to see an orthopedist. Gera recorded a pain score of 8. Gera's plan included ordering a right-hip x-ray specifically to evaluate for hardware malfunction, with the notation: "s/p R hip replacement Nov 2023, pain reported, obtain x-ray to ensure no hardware malfunction." Gera also ordered a steroid injection of the left hip greater trochanteric bursa for June 26, 2024.

24    On July 2, 2024, Gera conducted a third clinical encounter. His note again records bilateral hip pain, the prior right total hip arthroplasty, and Mr. McIntyre's request to

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

see an orthopedist. Gera recorded a pain score of 8. Gera's plan was limited to prescribing a prednisone 10 mg Dosepak for seven days.

25    Despite documenting awareness of Mr. McIntyre's right total hip arthroplasty, recording pain scores of 6 and 8 on multiple occasions, acknowledging Mr. McIntyre's repeated requests for orthopedic evaluation, and himself ordering a right-hip x-ray to rule out hardware malfunction, Gera did not secure timely orthopedic specialist care for Mr. McIntyre. According to the witness list submitted with Mr. McIntyre's administrative claim, Gera stated, "I'm not touching that," when asked to provide a right hip injection.

### A Single X-Ray Ruled Out Hardware Failure, But BOP Failed to Pursue Further Diagnostic Workup

26    On June 24, 2024, a teleradiology report was issued for Mr. McIntyre's right hip. The report, prepared by Dr. Farhad Khorashadi, MD, confirmed that the right total hip arthroplasty was in satisfactory alignment, that no fracture was present, and that the prosthetic hardware was intact without hardware failure.

27    That x-ray could not and did not evaluate the soft-tissue, bursal, or nerve complications that Mr. McIntyre's persistent swelling, numbness, and pain indicated. Once hardware failure was excluded as a cause of Mr. McIntyre's severe and worsening symptoms, BOP had an affirmative obligation to pursue further diagnostic workup including MRI or specialist evaluation to identify the actual cause of his pain. BOP did not do so.

28    On June 24, 2024, Gera sent Mr. McIntyre a radiology results memo stating that the right-hip x-ray showed "no concerning results." No further diagnostic workup was ordered.

### BOP's Own Acting Warden Admitted That an Orthopedic Consult Was Not Written Until More Than Three Months After Intake

29    On July 15, 2024, Acting Warden S. Brown of FCI Cumberland issued a written response to Mr. McIntyre's administrative remedy request (Remedy #1203176-F1). That response states, in relevant part:

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

a.    "A review of this matter reveals that you arrived at FCI Cumberland on April 5, 2024. You were seen by an Advanced Practice Practitioner three times since this date regarding your bilateral hip and shoulder pain. A consult with an Orthopedic Specialist was written on July 18, 2024. Though you are scheduled with the specialist, we cannot provide you with the date of the appointment due to security reasons."

30    This written admission by BOP's own Acting Warden establishes that, despite Mr. McIntyre's arrival with a documented recent hip replacement, his repeated written requests for orthopedic evaluation, and his worsening symptoms over more than three months, BOP did not even write an orthopedic consult order until July 18, 2024, more than three months after intake. Even after writing the consult, BOP could not provide Mr. McIntyre with an appointment date.

**BOP Approved the Orthopedic Consultation Multiple Times But Never Scheduled It**

31    The orthopedic consultation was approved on August 1, 2024. On August 12, 2024, Health Services confirmed to Mr. McIntyre that "this consult has been approved and is pending scheduling."

32    On September 1, 2024, Health Services told Mr. McIntyre that he was "scheduled for an orthopedic consultation" and to "watch call outs." No appointment took place.

33    The orthopedic consultation was approved again on October 15, 2024, and again on November 11, 2024. As of November 18, 2024, Health Services was still telling Mr. McIntyre that his "consultation is pending scheduling."

34    Mr. McIntyre was transferred to a halfway house on January 16, 2025, without ever having been seen by an orthopedic specialist during his incarceration at FCI Cumberland.

**BOP Failed to Respond Urgently to a Possible Prosthetic Joint Infection**

35    On September 26, 2024, Mr. McIntyre reported to Gera that he believed he had

9

developed a bacterial infection in the right hip, that his symptoms were consistent with septic arthritis, and that the infection area was spreading. He requested antibiotics and urgent evaluation.

36      Septic arthritis in a prosthetic joint is a medical emergency that, if untreated, can cause rapid destruction of the joint and surrounding tissue. BOP's response to this report was to place Mr. McIntyre on a list to be seen by his provider. No urgent evaluation, no imaging, and no antibiotic treatment was provided in response to this report.

**The Conditions of Mr. McIntyre's Confinement Aggravated His Injury**

37      Throughout his incarceration, Mr. McIntyre was required to sleep on a metal-frame rack bed fitted with an extremely thin institutional mattress that provided little support for his recently replaced hip.

38      That sleeping surface aggravated the inflamed surgical area and intensified Mr. McIntyre's pain. Mr. McIntyre's first written request, submitted on April 9, 2024, specifically requested an additional mattress or foam pad to accommodate his condition. That request was not granted. Thomas Gera, PA-C's own clinical note of May 8, 2024 specifically documents that Mr. McIntyre's pain was associated with sleeping on the thin institutional mattress.

**Mr. McIntyre's Administrative Remedy Filings Were Delayed, Rejected on Procedural Grounds, and Ultimately Unresolved**

39      Mr. McIntyre filed a BP-9 administrative remedy request on May 29, 2024. BOP did not log the request until June 18, 2024, twenty days after submission. The institution's response was due July 8, 2024. The Warden did not respond until July 15, 2024.

40      Mr. McIntyre filed a BP-10 Regional Appeal on July 3, 2024. The Mid-Atlantic Regional Office rejected the appeal on July 12, 2024, on the procedural ground that Mr. McIntyre had not included a copy of the BP-9 form or the Warden's response. The Regional Office stated that the institution had until July 28, 2024 to respond and instructed Mr. McIntyre to refile after that date.

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

41      Mr. McIntyre filed a BP-11 Central Office Appeal on July 18, 2024. The Central Office rejected the appeal on July 31, 2024, concurring with the Regional Office's rationale and again directing Mr. McIntyre to await the Warden's response before refiling.

42      Throughout this administrative process, Mr. McIntyre remained in constant pain. BOP's handling of the administrative remedy — including the twenty-day delay in logging the BP-9, the rejection of the BP-10 on procedural grounds while the institution had not yet responded, and the Central Office's concurrence — effectively delayed any institutional resolution of Mr. McIntyre's medical complaints while his condition worsened.

**Upon Release, Mr. McIntyre Promptly Received the Very Care BOP Had Withheld**

43      On January 16, 2025, Mr. McIntyre was transferred to a halfway house. On February 25, 2025, he was seen by an outside orthopedic specialist, who diagnosed a severely inflamed bursa in the right hip — a condition that had been left untreated for nearly a year. A steroid injection was administered, but due to the extensive inflammation and progression of the condition, the relief was minimal.

44      On June 4, 2025, Mr. McIntyre was released from BOP custody entirely. That same day, he was seen by Dr. Eric Gallagher, the orthopedic surgeon who had performed his right hip replacement, at Brattleboro Orthopedics, 17 Belmont Avenue, Brattleboro, Vermont 05301. Dr. Gallagher ordered an emergency MRI.

45      The emergency MRI confirmed that Mr. McIntyre has nerve and tissue damage in the surgical region of his right hip. Dr. Gallagher has advised that surgery is now necessary to remove the inflamed bursa and repair the tissue damage — a direct consequence of the BOP's failure to provide timely orthopedic evaluation and treatment during his incarceration.

46      The promptness and completeness of the medical care Mr. McIntyre received immediately upon his release confirm that such care was readily available and medically indicated throughout his incarceration, and underscore the unreasonableness of BOP's

11

prolonged failure to provide it.

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

**Mr. McIntyre Has Suffered Permanent Injury as a Result of the Delay**

47     Despite the treatment he has received since his release, Mr. McIntyre continues to suffer chronic hip pain, numbness, limited mobility, and a permanent limp.

48     Mr. McIntyre's treating orthopedic physician has documented that he now exhibits a persistent antalgic gait, a limp caused by pain, and that the extended period during which he remained without orthopedic care while incarcerated is a significant contributing factor to the prolonged duration and severity of his pain, to the nerve and tissue damage he has sustained, and to his permanent functional limitations.

49     Mr. McIntyre experiences significant pain when sitting for extended periods or when his legs remain in a horizontal position, and he experiences throbbing pain during sleep.

50     As a result of these injuries, Mr. McIntyre faces the prospect of future surgery and an ongoing, extended course of recovery.

### Count I — Negligence
(Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680)

51     The Plaintiff avers and repeats all of the allegations stated in Paragraphs 1 through 52, above and incorporates them in this Count as though they are fully restated herein.

52     Under 28 U.S.C. § 1346(b)(1), the liability of the United States is determined in accordance with the law of the place where the act or omission occurred. The acts and omissions giving rise to this action occurred at FCI Cumberland, in the State of Maryland. The substantive law of Maryland therefore governs the standard of care and the liability of the United States.

53     The United States, acting through the Bureau of Prisons, owed Mr. McIntyre a duty to provide for his safekeeping and care while he was in federal custody, including a duty to provide him with reasonable and adequate medical care. 18 U.S.C. §4042(a).

54     Because Mr. McIntyre was confined and wholly dependent upon the Bureau of Prisons for his medical needs, the United States owed him a duty to exercise reasonable care

13

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

to ensure that he received timely access to appropriate medical evaluation, diagnostic testing, and specialist treatment.

55    The BOP medical personnel responsible for Mr. McIntyre's care, including Thomas Gera, PA-C, were health care providers who owed him a duty to exercise that degree of care and skill exercised by reasonably competent health care providers with similar training and experience, acting under the same or similar circumstances, in accordance with the standards of practice among members of their respective professions.

56    Given Mr. McIntyre's recent right total hip arthroplasty, his presentation with persistent and worsening swelling, numbness, and severe pain in the surgical region, his repeated written requests for orthopedic evaluation, and the exclusion of hardware failure as a cause of his symptoms, timely orthopedic evaluation, advanced diagnostic imaging (including MRI), and specialist consultation were medically indicated and required by the applicable standard of care.

57    The United States, acting through BOP medical personnel, breached the applicable standard of care and its duty to Mr. McIntyre by, among other things:

(a) failing to provide timely orthopedic evaluation despite Mr. McIntyre's recent surgery, his worsening symptoms, and his at least eleven documented written requests for medical attention over a seven-month period;

(b) ailing to order advanced diagnostic imaging, including MRI, capable of evaluating the soft-tissue, bursal, and nerve complications that his symptoms indicated;

(c) relying upon a single x-ray that assessed only the prosthetic hardware while disregarding the soft-tissue, bursal, and nerve complications that Mr. McIntyre's symptoms signaled, and failing to pursue further diagnostic workup after that x-ray excluded hardware failure;

(d) failing to write an orthopedic consult order for more than three months after Mr.

14

McIntyre's arrival, as BOP's own Acting Warden admitted in writing;

(e) writing an orthopedic consult order on July 18, 2024 but then failing to schedule the consultation before Mr. McIntyre's transfer to a halfway house on January 16, 2025, despite multiple approvals of the consult on August 1, October 15, and November 11, 2024;

(f) failing to arrange and effectuate timely specialist consultation and follow-up care for a recent post-operative patient, including by scheduling the only outside orthopedic appointment so far in the future that it never occurred during his incarceration;

(g) failing to ensure continuity of the post-operative orthopedic care that Mr. McIntyre required and had disclosed upon intake, including his scheduled June 6, 2024 follow-up appointment with his orthopedic surgeon;

(h) failing to continue the pre-existing treatment regimen, bimonthly cortisone injections for Mr. McIntyre's left shoulder and left hip, V that he had been receiving before his surrender and that he disclosed to BOP upon intake;

(i) failing to respond urgently to Mr. McIntyre's September 26, 2024 report of symptoms consistent with septic arthritis in a prosthetic joint, a potential medical emergency, and providing no antibiotic treatment, no urgent imaging, and no urgent evaluation in response;

(j) denying Mr. McIntyre's April 9, 2024 request for an additional mattress or foam pad to accommodate his recent hip replacement surgery, despite Thomas Gera, PA-C's own subsequent clinical documentation that the thin institutional mattress was aggravating Mr. McIntyre's pain; and

(k) allowing Mr. McIntyre to remain without orthopedic evaluation or specialist treatment for the entire period of his incarceration despite his persistent and worsening symptoms, his documented written requests, and BOP's own clinical documentation of his condition.

58      As a direct and proximate result of these breaches, Mr. McIntyre's condition

15

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

went undiagnosed and untreated for the entire period of his incarceration, his inflammation and symptoms worsened, and he endured prolonged and unnecessary pain.

59      But for the negligent delay in providing appropriate diagnostic evaluation and specialist care, Mr. McIntyre's condition, including the severely inflamed bursa that was ultimately diagnosed, would have been identified and treated significantly earlier, and he would not have suffered the prolonged pain, nerve and tissue damage, and permanent functional impairment that he now experiences.

60      Mr. McIntyre's treating physicians have documented that the extended delay in providing orthopedic care during his incarceration is a significant contributing factor to the prolonged duration and severity of his pain and to his permanent functional limitations, including his permanent antalgic gait.

61      As a direct and proximate result of the negligence of the United States, Mr. McIntyre has suffered, and will continue to suffer: past and future physical pain and suffering; chronic hip pain, numbness, and inflammation; nerve and tissue damage; limited mobility; a permanent limp and permanent functional impairment; diminished quality of life; the need for future surgery and an extended course of recovery; and past and future medical expenses.

WHEREFORE, the Plaintiff Dana L. McIntyre respectfully requests that the Court enter judgment in his favor and against the Defendant the United States of America and award the following relief:

(a) Compensatory damages in the amount of $1,500,000, representing:

(i) past and ongoing physical pain and suffering;

(ii) permanent functional impairment, including chronic hip pain, numbness, limited mobility, a permanent limp, and nerve and tissue damage;

(iii) diminished quality of life;

(iv) medical expenses incurred for diagnostic testing, specialist consultation, and

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

treatment following his release from custody; and

 (v) future medical expenses, including the costs of anticipated future surgery and an ongoing course of recovery;

 (b) Costs of suit, to the extent recoverable against the United States; and

 (c) Such other and further relief as the Court deems just and proper.

Dated: July 31, 2026      Respectfully submitted,

           /s/  *Peter Ticktin*
           Peter Ticktin, Esquire
           Florida Bar No. 887935
           Roger I. Roots, Esquire
           Rhode Island Bar No. 6752
           David L. Perry II, Esquire
           Florida Bar No. 1045902
           The Ticktin Law Group
           (561) 232-2222
           Serv512@LegalBrains.com
           Serv514@LegalBrains.com
           270 SW Natura Avenue
           Deerfield Beach, FL 33441

           *Counsel for Plaintiff Dana L. McIntyre*